The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning ladies and gentlemen. We have two cases consolidated, 19-1916, George v. Wilkie, and 20-1134, Martin v. Wilkie. Mr. Carpenter, good morning. Thank you very much. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Kevin George. The error of the Veterans Court in this case was its reliance upon this Court's decision in Jordan. Although this Court's decision in Jordan was based upon a change in law, this Court's decision in Jordan does not apply. This Court's decision in Wagner controls, and there was no change in law as a result of this Court's decision in Wagner. Mr. Carpenter, what about DAV? DAV does not apply either, Your Honor, because the Wagner case does not represent a change in law. The Jordan case does represent a case of a change in law, and if Mr. George's allegation of cue would have been based upon the Jordan case, then both DAV and Jordan would apply. Since Mr. George's allegation was based solely upon the statute and this Court's interpretation of that statute in Wagner, neither DAV nor Jordan applies. Mr. Carpenter? Yes, Your Honor. This is Judge Stoll. So, as I take it, I think your position is that, you know, the statute on its face said what it said, and that it was such a clear understanding of the law that it was the true state of the law at the time of the initial decision. Do I understand that correctly? Yes. Yes, Your Honor. You do. Okay. What about the existence of the VA regulation that had the later found incorrect interpretation in it? What do we do with that? Well, Your Honor, I think you simply recognize it for what it is, as this Court did in Jordan. This Court recognized that the VA's general counsel had corrected the mistake in interpretation made by the Secretary when he promulgated that regulation. He issued a precedential opinion which invalidated that regulation because the Secretary's interpretation was in direct conflict with the plain and unambiguous language of 38 U.S.C. § 1111, formerly 311, because the Secretary's regulation only required that one of the two prongs of the statute be applied. And that was clearly a mistaken interpretation. Wagner on the other hand... That's all right. How do I, in future cases, know when this rule would apply? How do I know that the interpretation that was given by the VA was so wrong, so as to make it so it wasn't the true state of the law at the time of the initial decision such that Q would apply in future decisions? It seems like I'm concerned there's a slippery slope there in knowing when this would apply. I can appreciate that, Your Honor. I would say that it is a question of an analysis of what it was that the statute said. And if the statute was, as this statute is, so unquestionably plain on its face that there were two specific requirements imposed by Congress upon the Secretary before the presumption of soundness could be rebutted, then the interpretation or the plain language of the statute controls and supersedes any interpretation that would have been made by the Secretary to the contrary. But I would also suggest, Your Honor, that your concern is, I don't want to say unfounded, but less likely to come up in the future simply because the facts of this case are such that we have a judicial interpretation by this court in Wagner of what the statute always meant. And, therefore... Mr. Carpenter, just getting back to your understanding of Jordan. In Jordan, our court said that that now-invalidated Regulation 3.304 was the first commentary on Section 1111. And in fact, it was, quote-unquote, the initial interpretation of Section 1111. And so, therefore, our court treated that regulation as an official interpretation that was then later changed by the VA General Counsel Presidential Opinion. And so, therefore, in fact, what we were looking at in that case was a change in interpretation of the law that resulted in denying Mr. Jordan a Q claim in that instance because changes in interpretation of law are outside the scope of what can be considered a valid Q claim. So, in that sense, I don't think we can necessarily go along with you here on your understanding of Section 1111 being so plain on its face that there never really was an interpretation in the first instance, given that our court in Jordan already said there was, in fact, a, quote-unquote, initial interpretation of Section 1111 as represented by Regulation 3.304. Your Honor, I agree with everything that you said. I simply differentiate that the interpretation that was made by the Secretary in his regulation was the first interpretation of that statute by the Secretary. And that implicated the change in law provisions of the statute, and that was the regulation for VAQ rather than BVAQ, which was discussed in DAV and then was found to be a valid regulation based upon that change in law language. The question here... I'm sorry. Mr. Carpenter, I didn't quite follow what you said, and I want to make sure I do understand what you're saying. Are you saying that there's some kind of substantive distinction in how the Q claim regulation for the VA operates compared to the Q claim regulation for the BVA? No, Your Honor, I'm sorry. Because the words are the same. Oh, yes, they are, Your Honor, and they are to be applied the same way. What I am saying is that the prohibition that exists in those two regulations about change in law applies when you attempt to make an allegation of Q, as was done in Jordan, based upon that change in law. That is not what Mr. George's allegation of Q was, nor can it be imputed to have been as the Veterans Court did. Mr. George's allegation of Q was based solely upon the failure of the board in 1977 to have correctly applied the statute. You can finish your answer, Mr. Carpenter. Actually, I had, Your Honor, and I was about to say I'd like to reserve the balance of my time. We will save it for you. Ms. Oldham. Thank you, Your Honor, and may it please the Court. To pick up where Mr. Carpenter left off, to understand what a change of law is for purposes of Q, it's important, or a change in interpretation of law, it's important to read that term in context of what is Q. And Q is an undebatable error. And here, there's no dispute that in 1970, when the Secretary decided Mr. Martin's case, the RO had cut off, severed an entire portion of the statute that required clear and unmistakable evidence of aggravation. It cannot be debatable that that was an error, and in fact, the government is not debating that here. So when you're thinking about a change in interpretation of law, you have to see it in context of what is a Q. If a statute or a reg is ambiguous, and later it's interpreted in a way that is inconsistent with VA's application of it, it can't be undebatable that VA's otherwise reasonable application of the law or regulation or the statute was error. But when here, the statute is absolutely clear, and the Secretary logs off half of that statute, there can't be any debate that the failure to apply Congress's clearly expressed will with error. So a change in interpretation of law can't be a decision where the court simply restates what is already clear from the text of the statute, as it did here in Wagner. This is really consistent, actually, with the regulatory language, indicating that an otherwise correct application of the statute is in Q when there's a later change in interpretation. There's no debate here that there wasn't an otherwise correct application of the statute. This is also consistent with... This is Judge Chen. This is Judge Chen. The concern I have is, in Jordan, we were dealing with the very same statute that we're dealing with here, Section 1111, the presumption of soundness. And in that case, we did not make any fine distinctions between really bad interpretations of the statute and then fair but ultimately deemed incorrect interpretations of the statute. All we said there was that regulation that the VA had initially promulgated was, in fact, an initial interpretation of the statute, Section 1111. And so, therefore, what we had in that case, and as we have in this case, is we're looking at a change in interpretation of that statute. And in Jordan, we said you cannot get a Q through that change in interpretation. And in fact, as I understand the regulation for Q dating back to way prior to the codification of Q by Congress, it had always excluded from Q a change in interpretation of the law. And in Jordan, we've already said that what happened with respect to this presumption of soundness, there wasn't a change in interpretation. So, I don't know how we can get to where you want to get to under these circumstances. Your Honor, I think that my response is two-part. First, I would respectfully disagree with the characterization of what happened in Jordan. Jordan really wasn't about what happened in 1111. Jordan was solely about what happened with the regulation itself. The only issue, the only allegation of Q in that case was that the regulation, once VA invalidated it, that invalidation was retrospective. The court in Jordan didn't pass at all on what 1111, not the regulation, but 1111 required back then. In Patrick, the non-published decision in Patrick, the court made that distinction and found it to be crucial, and that's what's crucial in this case as well. Secondly, moving on to the language of 3.105 prior to statutory codification, that is the language that says that, you know, Q isn't a change in interpretation. But as I was saying previously, that has to be read in context of what is Q. And Q is an undebatable error. An error can't be debatable where maybe the statute is, excuse me, the statute or regulation is ambiguous or unclear in somehow. But it's absolutely undebatable here where the VA just ignored the second half of the statute. In fact, if you look at the rating decision at issue here, it's clear that they didn't apply the statute at all. They required evidence of establishing in-service aggregation, which is not required under 1111. Had they applied 1111 in 1970, they would have granted Mr. Martin's claim. Council, this is Judge Stoll. I want to, I hear what you're arguing. I want to just take you to a slightly different place if you don't mind. I, Section 711 was created by Congress and in order to create Q. And at the time, there was a regulation in place, which was 3.105. And the 1996 version had language in the preamble about that Q not being applicable where there was a change in law or a Department of Veterans Affairs issue. And then it referred to Section 3.114. What is the import of the reference to Section 3.114 in that language? Well, Your Honor, my understanding of 3.114 is that a change of law or VA issue is an actual substantive change in the law. And 3.114 only applies when there's an actual substantive change that is significant enough to create a new cause of action. It creates a new entitlement to benefits. And that's clearly not what happened here. 1111 has not changed. And Wagner's interpretation of it, although in our opinion it is not entirely relevant to the analysis here, only stated what 1111, only restated the law at the time, which was 1111. It didn't, you know, Wagner didn't create any new entitlement to benefits. So I think that the language that you point to, Judge Stoll, referencing 3.114 is also good support for our position that this wasn't a change in interpretation of law, even as VA understands an interpretation of law, what an interpretation of law can mean. Okay. Now let's look at something else, which is that, I mean, as we all know, you know, Q is different than other areas in the law in that it provides for a collateral attack on a final judgment. It's really rare to find that. So when Congress passes a law that says that it's going to allow for collateral attack of a final judgment, shouldn't we look for Congress to expressly say that that includes where an interpretation or where the law has changed? I mean, normally, you know, under Supreme Court precedent, when the law changes, it's only going to apply to cases that are still pending. It won't apply to cases where the judgment, final judgment has been entered. So I hope you understand the importance of my question, which is really that should we have to look for express intent from Congress in this situation where it's so different from the typical state of the law? No, Your Honor, not in this case because. Please continue to answer questions. Thank you. Congress didn't really say much at all about what constitutes Q in 711 or 5109A. Instead, it codified what the body of law existing at the time was. And that body of law included, for example, the Berger case where the Veterans Court interpreted 3.105 and said that if regulation or statute is clear on its face, then a decision, then, you know, that wouldn't be a change of interpretation. So I don't think it's, I don't think we need to look for explicit intent from Congress here. And in terms of retroactive applicability, again, we don't think that Wagner, Wagner really plays into this analysis at all. It's all about the plain language of 1111 or 311 as it existed in 1970. But even in the case that wasn't really discussed in the briefing, but T, the Supreme Court said that when the court's precedent require a decision at the time the decision is made, it's not really a change in law. Here, 1111 required Wagner to be decided that way, the way that it was. So it wasn't, in fact, a change of law. Thank you. Thank you, Ms. Odom. We'll save your time. Ms. Koenig. Thank you. Good morning, Your Honors, and may it please the Court. Appellate's counsel here would have us ignore and or abrogate binding Supreme Court precedent, Federal Circuit precedent, as well as Veterans Court precedent in favor of following the unpublished decision in Patrick, which is in conflict with that binding precedent. Now just to pick up where counsel sort of left off in the last argument, the Supreme Court here in the Supreme Court in Rivers inciting Harper acknowledged that principles of finality require that when there's been a new judicial pronouncement of law, that that new pronouncement, while it may say what the law has always meant, still only applies retroactively to cases that are open on direct review. It does not apply to cases which are final. Now that Supreme Court- This is Judge Laurie, Ms. Koenig. Didn't I hear Mr. Carpenter and maybe Ms. Odom say they're not arguing that there was a change in the principles of finality when there's been a new judicial pronouncement of law? Well, they do argue that, Your Honor, but as Judge Chen acknowledged, our case-this court's case in Jordan stated that the Regulation 3.304 provided the first commentary and the initial interpretation of Section 1111. So this court has already stated that there was an initial interpretation, and so Wagner's decision on the interpretation of 1111 must be considered a change in interpretation in light of Jordan. Now the Supreme Court's decisions on finality were discussed in this court's decision in DAV versus Gober, and the court in that case acknowledged that new interpretations of law only have retroactive effect on decisions open on direct review and do not apply in the context of Q. Similarly, the Supreme Court-or this court in Jordan has stated that the Supreme Court has repeatedly denied attempts to reopen final decisions in the face of new judicial pronouncements or even in decisions finding statutes unconstitutional. So the court's decision in-or the appellant's argument here really is an attempt to disrupt the finality of the decisions that were issued in 1970 and 1977 in this case, and the court in DAV and Jordan have already addressed all of the issues that the appellants raised here. Ms. Koenig, this is Judge Chen. Did the government request rehearing or rehearing in bank in the non-presidential Patrick opinion? Your Honor, I don't believe that there was-or I guess I'm not sure that there was a request for rehearing or rehearing on bank, but the counsel in that case had asked for the decision to be reissued presidentially, and the court had declined to reissue the decision presidentially. And I think it's-in reading the Patrick case, it's clear that it's in conflict with this court's decision in both DAV and Jordan, and those cases came first in time. And so I would argue that the presidential-the non-presidential decision in Patrick should not be followed here in favor of following the presidential decision in Jordan. Tom, I would like to ask you-this is Judge Stoll. Hi. I would like to ask you a question. Let's just set aside the existence of Jordan for a minute. And I want to ask you the same question I asked your opposing counsel, which is in the 1996 version of 3.105, what do you think is the import of the reference to Section 3.114 in that preamble? Your Honor, I-the reference to-or 3.114 appears to be regardless of dealing with a specific change in law, but I don't think that the reference to that-to that regulation- So the preamble says that the provisions of this section, that is Q, will not apply where there's a change in law or Department of Veterans Affairs issue. And it-and then it cites 3.114. So you don't think that 3.114 is a limiting reference on that language? Is that what you're saying? I don't, Your Honor. And- And why not? Well, because that-that language was later codified and adopted into-into the case law and into later versions of the regulation. And- So the later law-I'm supposed to read this regulation as it started in 1996. Well, I'm trying to understand what Congress was thinking. I'm supposed to think that they also understood how the agency was going to change it. Well, Your Honor, I-I simply don't think that you can read that language in the preamble of 3.105 as it existed in 1996 to only apply in the context of the specific situation of 3.114. Maybe it's listed as an example, but it-it doesn't-the language doesn't limit-the language of the regulation of 3.105 doesn't limit its application to that situation from 3.114. And I think later-later statutes, including 20.1403-sorry, regulations, including 20.1403 have sort of clarified or reaffirmed that Q is not available where there's been a change in interpretation of the law and must be looked at at the time of the-it must be looked at under the law that was understood at the time of the original decision. In this case, Regulation 3.304B was a valid binding regulation at the time that the secretary and the board issued the decisions in Martin and in George. And that valid binding regulation controls the decisions in those cases. And a later different interpretation of the statute cannot retroactively-cannot retroactively change the fact that the regulation was binding and it was understood to be binding at the time of the original decision. Now, the appellant's counsel argues that Section 1111 was so clear on its face that it was undebatable, even absent the decision in Wagner. But actually, the decision in Wagner, this court acknowledged that the issue was a difficult one. And at several places throughout the decision, the court noted that Section 1111's language was- This is Judge Stoll again. Could you point out the particular language you're relying on? Because as I see here, I'm not sure what you're referring to. In Wagner, they said it was so difficult or a close issue. Yes, Your Honor. There are a couple of places in the decision. At page 1093 of this-of the case, the court states at the outset that we note that the language of Section 1111's rebuttal standard is somewhat difficult to parse. It also states that on its face, Section 1111 appears to be somewhat self-contradictory and that's on the same page. And then in the next paragraph, the court states that not surprisingly the parties offered differing interpretations of the statute's effect. So I think even Wagner acknowledged that Section 1111 wasn't so clear on its face as to provide a basis for a cue. But again, in addition to that, the regulation was clearly binding at the time. So even if 1111 could be read to be clear on its face, an undebatable error, the regulation here would still control the application of cue as this court found in Jordan. Now, this court in Joyce also acknowledged that where the regulations in place at the time of the original decision imposed a different rule, Wagner does not apply. And the Veterans Court decision in Percival also, citing Jordan, acknowledged that 3.304 was the initial interpretation of Section 1111. And so the appellants here attempt to disrupt the principles of financial law as issued by the Supreme Court and as discussed in DAV v. Gilbert in favor of following this unpublished decision that's in conflict with binding Federal Circuit precedents. Unless your owners have further questions, then... Hi, this is Judge Stoll again. On the non-presidential passage decision, do you read that as saying that there's a difference between arguing the case as application of law to fact versus arguing it as saying that there was a change in law? I'm asking for your help in understanding, you know, someone knows this. Yeah. I read Patrick as a really, truly a misapplication of reverse and the principles of finality. I think there is...it's also arguably distinguishes between sort of the regulatory interpretation versus the statutory interpretation. But the court in Jordan cited to Wagner in its decision and in finding that Wagner or that Wagner and the OGC opinion were a change in the interpretation of Section 1111. So I don't think that Jordan supports to the extent that Patrick can be read this way. I don't think that Jordan would support there being a distinction between a judicial pronouncement of the law versus a regulatory interpretation of the law, as contrasted with a regulatory interpretation. Okay. Ms. Koenig, just one last quick question. I was just wondering if you're aware of any other area of the law where Congress has enacted a way to collaterally attack final judgments in other contexts where the changes in judicial interpretations of the statute can get retroactively applied to final judgments. I don't know if it's something like...it could be anything, social security benefits, criminal law, anything. Are you aware of other fields where Congress created a regime where claimants could potentially revisit their earlier final judgments based on new understandings, new judicial understandings of statutes? Your Honor, I'm not aware of that. I guess this court issued an en banc decision in Fort Copio somewhat recently, and Congress followed that decision with a supplemental claim route, which allowed for veterans to receive benefits based on that change in the law retroactively. And so I think Congress, in issuing that act, acknowledged that, absent that specific action, that the change in the interpretation from Fort Copio could not be retroactively applied to support a Q claim. And so they created a congressional exception to the Q system, I guess, for lack of a better word. And I'm not aware of other specific instances, although I think they would have to be specifically created by Congress. And here, Congress, in passing the Q statutes, as DAV found...this court found in DAV that Congress intended to...it was clear that Congress intended to codify the regulations as they existed at the time, and the Veterans Court decision and other case law that existed at the time, including the Veterans Court decision in 1997. So unless your honors have further questions, we would ask the court to affirm the board decisions in these cases. Thank you. Thank you, Ms. Pandy. No one ever loses points by not using up all their time. Mr. Carpenter has two minutes. Thank you, your honor. I'd like to begin by talking about the nature of the Q statutes, both of them. Congress created a means for a collateral attack. Congress created a remedial statute. There is no reason that the intent of Congress should be abrogated by the dispute that has been created by the decision made by the Veterans Court. The Veterans Court has created an impediment to accomplishing the intent of Congress by creating a question about the nature of a change in interpretation. It is not to say that a change in interpretation is not a bar. It is. But the question here goes to whether or not the allegation of Q made exclusively upon the statute can be impeded from being successful because of an action taken by the VA's general counsel to correct a clear mistake by the secretary in writing a regulation that directly contradicted the plain meaning of the statute as interpreted by this court in Wagner. And as a result, the remedial effect of the intent of Congress needs to be acknowledged and this court needs to reject the impediments to allowing for the remedy of the collateral attack when there is, as in this case, a decision made that didn't apply the regulation and the government suggests that somehow the regulation applied even though the board never relied upon the regulation. The board, in fact, attempted to rely upon a different statute, a statute that shifted the burden from the appellant, excuse me, from the government to the appellant and that the statute that applied did the reverse. Thank you very much, Your Honor. Thank you, Mr. Kaufman. Ms. Oden. Thank you, Your Honor. I'd like to start by pointing out and responding to opposing counsel's the Blue Water Navy Act. That did indeed involve a new judicial understanding. This court said that 1116 was ambiguous in Haas and then later in Procopio said it was unambiguous. That is a change in interpretation of law. That's not what happened here. Here, VA ignored the clear rule of Congress by lobbing off half of the statute to allow for the wrong done to Mr. Martin to be It is, in fact, a disruption of the finality of the 1970 decisions. It's exactly what Congress intended. The court should continue to do what it did in Wagner and Patrick and vacate the board's Veterans Court decision finding that Mr. Martin's allegation of abuse precluded as a matter of law. Thank you. Thank you, Ms. Oden. The case is committed. We will run the decision in due time.